## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE NO.: 5:13-CV-00426 (LJA) |
| v. | : | |
| | : | |
| HEADHUNTERS RACETRACK, LLC; EFFIE M. HARRIS, Individually and as Administratrix of Estate of Antonio Harris; CHALON BANKS, Individually and as Parent and Natural Guardian of A.H. and S.H., minor children; EMEKIA PITTS, Individually and as Parent and Natural Guardian of E.H. and C.H., minor children; TED YARBROUGH; ELDRED BAILEY; ALVIN EDWARDS; ROGER REAVES; and HEADHUNTERS MOTOR CLUB, INC., | : : : : : : : : : : : : : : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>ORDER</u>

This is a declaratory judgment action in which Plaintiff Nautilus Insurance Company ("Nautilus") seeks a determination that it is not obligated to defend or indemnify Defendants Headhunters Racetrack, LLC, ("Racetrack Defendant"); or Headhunters Motor Club, Inc., Ted Yarbrough, Eldred Bailey, Alvin Edwards, or Roger Reaves ("Club and Individual Defendants") against claims asserted by Effie M. Harris, individually and as administratrix of the Estate of Antonio Harris ("Defendant Harris"); Chalon Banks, individually, and as parent and natural guardian of A.H. and S.H., minor children of Antonio Harris, ("Defendant Banks"); and Emekia Pitts, individually and as parent and natural guardian of E.H. and C.H., minor children of Antonio Banks, ("Defendant Pitts"), (collectively "Defendants"), in two separate state court wrongful death actions ("Underlying Actions") arising from an accident Antonio Harris ("Mr. Harris") had while driving a motor

vehicle on the drag strip at Put Put Racetrack in Eatonton, Georgia.

Before the Court are Nautilus' Motion for Summary Judgment and Defendants Harris and Banks' Motion to Dismiss Nautilus' Second Amended Complaint. (Docs. 55 and 50). For the reasons that follow, Nautilus' Motion for Summary Judgment, (Doc. 50), is **GRANTED** and Defendants Harris and Banks' Motion to Dismiss, (Doc. 55), is **DENIED**.

## FACTUAL BACKGROUND[1]

### I.   Put Put Racetrack

In the late 1970's, Individual Defendants—four motorcycle racing enthusiasts—informally created Headhunters Motor Club. (Docs. 68 at 5:20-12:4; and 66 at 7:5-10:18). Although the four men did not bind themselves to a written partnership agreement or even maintain written meeting minutes, each assumed, and at all relevant times have held, the following roles: Ted Yarbrough served as president, Roger Reaves as vice-president, Alvin Edwards as secretary, and Eldred Bailey as treasurer. (Docs. 51-2 at 4; and 68 at 10:1-17). In 1978, Individual Defendants purchased approximately 15 acres of land located at 212 Edward Reaves Road, Eatonton, Georgia, and financed the construction of a drag strip on the land. (Docs. 68 at 8:20-9:1; 10:25-12:2; and 51 ¶ 58). At all relevant times, title to the land has been held in the name of Headhunters Motor Club. (Docs. 68 at 9:2-8; 66 at 8:10-20). At all relevant times, the drag strip has been operated under the trade name Putt Putt Racetrack ("Put Put").[2] (Docs. 51 ¶¶ 58, 59; and 68 at 12:15-13:3). On February 9, 1999, Headhunters Motor Club, Inc. was incorporated under the laws of the state of Georgia as a for-profit corporation. (Doc. 51-3). On September 11, 2010, the corporation was administratively

---

[1] The relevant facts are derived from Nautilus' Second Amended Complaint (Doc. 41); Racetrack and Individual Defendants' Answer (Doc. 44); Defendants Harris and Banks' Answer (Doc. 45); Nautilus' Motion for Summary Judgment (Docs. 50 and 52); Nautilus' Statement of Undisputed Material Facts (Doc. 51); Defendants Harris and Banks' Response in Opposition to Nautilus' Motion for Summary Judgment (Doc. 54); Racetrack and Individual Defendants' Answers and Objections to Nautilus' First set of Interrogatories (Doc. 51-2); Defendants Harris and Banks' Statement of Material Facts as to which there are Genuine Disputes (Doc. 54-1); Defendants Harris and Banks' Response to Nautilus' Statement of Undisputed Material Facts (Doc. 54-2); Racetrack and Individual Defendants' Response in Opposition to Nautilus' Motion for Summary Judgment (Doc. 60); Racetrack and Individual Defendants' Response to Nautilus' Statement of Undisputed Material Facts (Doc. 61); Nautilus' Reply in Support of its Motion for Summary Judgment (Doc. 69); Defendant Harris' Complaint in the Superior Court of Putnam County, Georgia civil action (Doc. 13-1); Defendant Pitts' Complaint in the State Court of Putnam County, Georgia civil action (Doc. 39-2); and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings and the discovery and disclosure materials on file, all of which are construed in the light most favorable to the non-moving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[2] While the trade name is Putt Putt, the drag strip is referred to as "Put Put Racetrack" in the insurance policy at issue.

dissolved.  (*Id.*)

On May 9, 2012, Headhunters Racetrack was organized as a limited liability company under the laws of the state of Georgia.  (Docs. 51 ¶ 60; 51-1).  At all relevant times, Individual Defendants have been the only officers of the corporation.  (Doc. 51 ¶ 61).  Like their roles with Headhunters Motor Club, Inc., Individual Defendants held the following positions as officers of Headhunters Racetrack, LLC: Defendant Yarbrough as President, Defendant Reaves as Vice-President, Defendant Edwards as Secretary, and Defendant Bailey as Treasurer.  (*Id.*)  At all relevant times, Headhunters Racetrack, LLC held Racetrack License Number 979, which was issued under the name Put Put Racetrack and which authorized Defendant Racetrack to promote and conduct motor vehicle races at 212 Edward Reaves Road, Eatonton, Georgia. [3]  (*Id.* ¶ 58).

On December 12, 2013, Headhunters Motor Club was administratively reinstated.  (Doc. 51-3).  The accompanying certificate of reinstatement provided, "[t]he reinstatement shall relate back to and take effect as of the date of the administration [sic] dissolution and the corporation may resume its business as if the administrative dissolution had never occurred."  (Doc. 51-3).

## II.   The Insurance Policy

At some point prior to February 22, 2012, Nautilus issued commercial general liability insurance policy number NN093263 to "Put Put Racetrack"[4] as the named insured for the period February 22, 2012 to February 22, 2013 ("the Policy").  (Doc. 13-9).  On the Policy's Common Policy Declarations page, only "Put Put Racetrack" is listed as a "Named Insured."  Section I of the Policy's Commercial General Liability Coverage Form provides:

> [Nautilus] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Nautilus] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Nautilus] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this

---

Therefore, the Court will refer to the drag strip as Put Put in this order.

[3] Although there is no evidence in the record of the date on which Nautilus issued the Policy, the Court notes that the Policy represents the renewal of a pre-existing policy.  *See* (Doc. 13-9).

[4] The Policy lists "222 Edwards Reeves Road" as the address for the drag strip, not "212 Edward Reaves Road," as listed on Racetrack License Number 979, which permits the Racetrack Defendant to conduct events at the drag strip. (Docs. 13-9 and 51 ¶ 58).

insurance does not apply. [Nautilus] may, at [Nautilus']
discretion, investigate any "occurrence" and settle any claim or
"suit" that may result.

(*Id.*)

Section II of the Policy's Commercial General Liability Coverage Form, entitled
"WHO IS AN INSURED," provides in relevant part:

> 1.  If you are designated in the Declarations as:
>
> ***
>
> b.  A partnership or joint venture, you are an insured. Your
> members, your partners, and their spouses are also insureds,
> but only with respect to the conduct of your business.
>
> c.  A limited liability company, you are an insured. Your
> members are also insureds, but only with respect to the
> conduct of your business. Your managers are insureds, but
> only with respect to their duties as your managers.
>
> d.  An organization other than a partnership, joint venture
> or limited liability company, you are an insured. Your
> "executive officers" and directors are insureds, but only with
> respect to their duties as your officers or directors. Your
> stockholders are also insureds, but only with respect to their
> liability as stockholders.
>
> ***
>
> 2.  Each of the following is also an insured:
>
> a.  Your "volunteer workers" only while performing duties
> related to the conduct of your business, or your
> "employees," other than either your "executive officers" (if
> you are an organization other than a partnership, joint
> venture or limited liability company) or your managers (if
> you are a limited liability company). But only for acts within
> the scope of their employment by you or while performing
> duties related to the conduct of your business.
>
> ***
>
> No person or organization is an insured with respect to the
> conduct of any current or past partnership, joint venture or
> limited liability company that is not shown as a Named Insured
> in the Declarations.

(*Id.*)

The Policy also contains an "EXCLUSION – PARTICIPANTS" endorsement (the

"Participants Exclusion"). Part A of the Participants Exclusion provides, "[t]his insurance does not apply to "bodily injury" or medical payments to any "participant" while in the "activity area." (*Id.*) Part B defines key terms as follows:

1. "Activity area" means any site specifically set aside for the purpose of preparing for, participation in, or assembly before, during or after, any "event" including, but not limited to, the arena, chute, corral, course, field, infield, pit, ring, sideline, stage or track.

2. "Event" means any activity of an athletic or sports, or entertainment nature of "limited duration" that you manage, operate, or sponsor including, but not limited to, a carnival, circus, concert, contest, demonstration, exhibition, fair, game, match, parade, race, rodeo, show, stunting activity, or theatrical performance.

3. "Limited duration" means a time period that can be established by a beginning and ending date."

4. "Participant" means any person practicing [sic], preparing or rehearsing for, instructing, participating or sparring in, any "event" including, but not limited to, animal handlers, announcers, assistants, attendants, coaches, cheerleaders, clowns, contestants, "employees", entertainers, independent contractors, mechanics, musicians, officials, operators, producers, promoters, referees, singers, speakers, sponsors, stage crews, stock contractors, "temporary workers", vendors or their "employees", "volunteer workers", or workers."

The Policy further contains an "EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES" endorsement (the "Punitive Damages Exclusion"). The Punitive Damages Exclusion provides, "[t]his insurance does not apply to punitive or exemplary damages." (*Id.*)

Finally, the terms of the Common Policy Conditions limit the right of an insured to transfer their interests under the Policy. Specifically, Section F provides, "[y]our rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." (*Id.*)

## III. Claims in the Underlying State Court Actions

Defendant Harris filed a complaint dated June 14, 2013 in the Superior Court of Putnam County, Georgia, against Headhunters Racetrack d/b/a/ Putt Putt Racetrack. (Doc. 13-1). In her complaint, Defendant Harris claims that Defendant Racetrack's

negligence caused Mr. Harris' accident and death.  Specifically, Defendant Harris asserts, "[o]n August 23, 2012, Plaintiff's son, Antonio Harris, was driving his car on [d]efendant's racetrack when he lost control of it, hit a guardrail, was seriously injured, and died the same day from his injuries."  (*Id.* ¶ 7).  Defendant Harris also claims, "Antonio D. Harris was an invitee who paid [d]efendant all fees required for the use of its race track [sic] and he was using it in accordance with all of its rules and regulations."  (*Id.* ¶ 16).  On December 3, 2013, Defendant Harris moved to add Individual Defendants as defendants in the Underlying Actions. (Doc. 13-3).  That day, Defendant Banks also moved to intervene as a plaintiff necessary for the protection of the interests of A.H. and S.H., two minor children of Antonio Harris.  (Doc. 13-2).  Defendant Harris also prays for compensatory damages and any other relief the court deems proper.  (*Id.*)

Defendant Pitts filed a complaint dated August 25, 2014 in the State Court of Putnam County, Georgia against Headhunters Racetrack, LLC d/b/a/ Put Put Racetrack and/or Headhunters Put-Put Dragway and/or Headhunter Dragway, Head Hunters Motor Club, Inc.; and John Does 1-10. (Doc. 39-2).  In her complaint, Defendant Pitts alleges one count of negligence and one count of premises liability arising from Mr. Harris' accident and death. (*Id.*)  Like Defendant Harris, Defendant Pitts also alleges, "[o]n or about the evening of Thursday, August 23, 2012, ANTONIO DION HARRIS was driving his 1978 Chevrolet Malibu on the property of Defendant, HEADHUNTERS MOTOR CLUB, INC., when he lost control of the vehicle causing it to veer left and crash through a guardrail[,] resulting in his serious injury. The decedent, ANTONIO DION HARRIS, subsequently died that same night while en route to Putnam County Hospital from injuries suffered."  (*Id.* ¶ 4). Defendant Pitts also alleges, "[o]n the night of his injury and death, decedent, ANTONIO DION HARRIS, was an invitee who had paid all fees required for the use of the racetrack." (*Id.* ¶ 30).  Further, Defendant Pitts alleges, "[d]efendants in allowing decedent, ANTONIO DION HARRIS, and others to race on the track with unsafe guardrails and in failing to take adequate measures to protect its business invitees from the hazards presented by the unsafe guardrails were otherwise negligent.  (*Id.* ¶ 41).  Defendant Pitts also prays for compensatory damages and any other relief the court deems proper, including punitive damages.  (*Id.* at 11).

## IV.  Reservation of Rights Letters

Defendant Yarbrough notified Nautilus of Mr. Harris' accident on August 24, 2012, one day after the accident occurred. *See* (Doc. 41-2 at 33). On September 7, 2012, fourteen (14) days after receiving notice and prior to the filing of any complaints in the Underlying Actions, Nautilus issued a reservation of rights letter to Defendant Yarbrough. (*Id.* at 9-12). The letter outlined the scope of the Policy's coverage related to bodily injuries and recited the terms of the Participants Exclusion. (*Id.* at 10-11). The letter explicitly warned, "[a]s you can see from the above policy language[,] a 'participant' is any person participating in any 'event' and an 'event' includes a race. You indicated that Mr. Harris was participating in a racing event that evening. If that is true this exclusion will apply." (*Id.* at 11). The letter further stated, "Nautilus Insurance Company, must advise you that we may have no duty to defend and/or indemnify Put Put Racetrack for the reasons outlined[.]" (*Id.* at 9). Finally, the letter provided Nautilus' mailing address, two telephone numbers and a facsimile number and asked that Defendant Yarbrough contact Nautilus "[i]f he has any questions or desire to discuss further the content of this letter or the claim[.]" (*Id.* at 9 and 11). No evidence in the record indicates, nor do Defendants assert, that any Defendant responded to Nautilus' first reservation of rights letter.

On October 30, 2012, Nautilus issued a supplemental reservation of rights letter to Defendant Yarbrough. (*Id.* at 14-16). Once again, Nautilus outlined the Policy terms governing coverage for bodily injuries and those related to the Participants Exclusion. (*Id.* at 15-16). Nautilus also indicated that, "[t]he TENCO adjuster verified the facts of the accident [and,] [b]ecause the fatal injuries to Mr. Harris occurred as a result of his participation in a racing event, [Nautilus is] putting you on notice that if a claim is presented there will likely be no coverage under the policy issued by Nautilus." (*Id.* at 16). Furthermore, Nautilus advised that it was conducting its investigation "under a reservation of rights as to the terms, provisions and conditions of the policy," including, Nautilus' "right to determine [Nautilus'] duty to defend and/or indemnify Put Put Racetrack[.]" (*Id.* at 14). Finally, the letter provided Nautilus' mailing address, two telephone numbers and a facsimile number. (*Id.* at 14). Nevertheless, no evidence in the record indicates, nor do Defendants assert, that any Defendant responded to Nautilus' second reservation of rights letter.

On July 23, 2013, Nautilus issued a third reservation of rights letter, acknowledging receipt of the complaint filed by Defendant Harris in the Superior Court of Putnam County,

Georgia and outlining the claims alleged in the complaint.[5]  (*Id.* at 18-25).  Nautilus advised that it had retained the law firm Freeman Mathis & Gary LLP to represent the Racetrack Defendant in the Underlying Action, but again warned that, "[o]ur investigation shows and the Complaint alleges that the decedent was participating in a race 'event' in the 'activity area' as defined by the policy. Therefore, the claims asserted by the Plaintiff are precluded from coverage under the policy." (*Id.* at 23).  Moreover, Nautilus stated that it:

> reserves the right to disclaim coverage and to bring an action in an appropriate state or federal court of competent jurisdiction and venue in order to lime, obtain a declaration, or interplead, to enforce the limitations mentioned herein and declare the obligations and responsibilities of the parties hereto under the contract of insurance.

(*Id.* at 24).  Finally, the letter also provided Nautilus' mailing address, two telephone numbers and a facsimile number. (*Id.* at 18).  Again, no evidence in the record indicates, nor do Defendants assert, that any Defendant responded to Nautilus' third reservation of rights letter.

On October 16, 2013, Nautilus issued another letter indicating that Nautilus had retained the law firm Dre, Eckl & Farnham, LLP to provide the defense in the Underlying Action, not the previously identified Freeman, Mathis & Gary, LLP.  (*Id.* at 27).  Nautilus also stated that its "position concerning coverage, as outlined in [Nautilus'] letter of July 23, 2013 remains the same." (*Id.* at 27).  Nautilus further provided the name, email, telephone number, and facsimile number of its senior litigation specialist, Brenda Phillips ("Ms. Phillips"), and offered to address any questions. (*Id.*)  However, no evidence in the record indicates, nor do Defendants assert, that any Defendant responded to Nautilus' fourth reservation of rights letter.

On October 28, 2013, Nautilus issued another reservation of rights letter to Defendant Yarbrough.  (*Id.* at 30-31).  Nautilus warned, "[i]f it is determined that [the Racetrack Defendant] does not qualify as an insured under the policy, no coverage would be afforded for the claims at issue." (*Id.* at 31).  Nautilus noted that the letter "supplements [Nautilus'] reservation of rights letters dated July 23, 2013 and October 16, 2013" and expressly stated that Nautilus "still assert[s] and maintain[s] [Nautilus'] position as previously outlined in

---

[5] There is no evidence in the record that indicates when Defendant Harris filed or served her complaint in the Underlying Actions, or when Nautilus was notified of Defendant Harris' complaint. However, Defendant Harris' complaint is dated June 14, 2013. (Doc. 13-1 at 13).

those letters and attached for [Defendant Yarbrough's] review." (*Id.*) The letter also provided Nautilus' mailing address, two telephone numbers and a facsimile number. (*Id.* at 30). Again, no evidence in the record indicates, nor do Defendants assert, that any Defendant responded to Nautilus' fifth reservation of rights letter.

On May 6, 2014, while Defendant Harris' motion to add Individual Defendants was still pending in the Underlying Actions, Nautilus issued a reservation of rights letter to Individual Defendants and John T. McGoldrick and Joel A. Howe, as personal counsel for Individual Defendants. (*Id.* at 33-38.) Nautilus informed Individual Defendants that Nautilus' letter dated September 7, 2012, notified Defendant Yarbrough that "the loss [at issue in the Underlying Action] may not be covered [under the Policy], but that Nautilus would investigate the loss under a full reservation of rights." (*Id.* at 33-34). Nautilus also attached and referred Individual Defendants to the letters dated October 30, 2012; July 23, 2013; October 16, 2013; and October 28, 2013, in which Nautilus supplemented its reservation of rights. *See* (*id.* at 34). Nautilus went on to explain that, "[b]ecause the allegations in [Defendant Harris'] Complaint indicate that [Antonio Harris] was injured while racing his car in a race on the racetrack, the [Participants Exclusion] may be [sic] preclude coverage." (*Id.* at 37). Nautilus also stated, "to the extent [Defendant Harris] seeks punitive damages against the Individual Defendants, the [Punitive Damages Exclusion] precludes coverage for such damages." (*Id.*) Further, Nautilus warned, "[a]lthough our analysis indicates that coverage may not exist for the Individual Defendants, Nautilus will defend Messrs. Yabrough [sic], Bailey, Edwards, and Reaves if they are added as defendants, subject to the full reservation of rights set forth in this letter." (*Id.*) Finally, Nautilus expressly declared, "[n]o action by Nautilus [in] investigating or defending this claim . . . shall be considered an estoppel or waiver of Nautilus' rights." (*Id.*) Nautilus also provided the name, email, telephone number, and facsimile number of Ms. Phillips and offered to address any questions. (*Id.*) Nevertheless, no evidence in the record indicates, nor do Defendants assert, that any Defendant responded to Nautilus' sixth reservation of rights letter.

Finally, on October 15, 2014, Nautilus issued another letter to Mr. McGoldrick and Mr. Howe, as personal counsel for the Racetrack, Club, and Individual Defendants, acknowledging receipt of the complaint filed by Defendant Pitts and outlining the claims

alleged in her complaint.[6]  (*Id.* at 2-8).  Nautilus attached and referenced the previous five reservation of rights letters and outlined the scope of the Policy's coverage related to bodily injuries.  *See* (*Id.* at 2).  After reciting the terms of the Participants Exclusion, Nautilus warned, "[b]ecause the allegations in [Defendants Harris, Banks and Pitts'] Complaint[s] indicate that [Antonio Harris] was injured while racing his car in a race on the racetrack, the [Participants Exclusion] may preclude coverage." (*Id.* at 6).  Nautilus also advised, "to the extent [Defendants Harris, Banks, and Pitts] seek punitive damages against [the Racetrack, Club, or Individual Defendants], the [Punitive Damages Exclusion] precludes such damages." (*Id.*)  Nautilus indicated that it would nevertheless "defend [the Racetrack and Club Defendants] against the claims made in [Defendant Pitts'] lawsuit under a full reservation of rights" and warned that "if damages are awarded against any of the Defendants [in the Underlying Actions] they may be the exclusive responsibility of the Defendants. . . ." (*Id.*)  Nautilus also stated that "[n]o action by Nautilus [in] investigating or defending this claim . . . shall be considered as an estoppel or waiver of Nautilus' rights." (*Id.* at 7).  Once more, Nautilus provided the name, email, telephone number, and facsimile number of Ms. Phillips and offered to address any questions.  (*Id.*)  Even so, no evidence in the record indicates, nor do Defendants assert, that any Defendant responded to Nautilus' seventh reservation of rights letter.

## **PROCEDURAL BACKGROUND**

On November 11, 2013, Nautilus filed its original complaint for declaratory judgment. (Doc. 1).  Subsequently, Nautilus amended its complaint twice.  (Docs. 13 and 41).  On November 25, 2014, Nautilus filed its Second Amended Complaint for Declaratory Judgment; and, on February 6, 2015, Nautilus moved for summary judgment.  (Docs. 41 and 50).  On February 26, 2015, Defendants Harris and Banks responded to Nautilus' motion for summary judgment and moved to dismiss Nautilus' Second Amended Complaint.  (Docs. 54 and 55). On March 16, 2015, the Racetrack and Individual Defendants responded to Nautilus' motion for summary judgment.  (Doc. 60).  Defendant Pitts responded on March 17, 2015.  (Doc. 63).

---

[6] There is no evidence in the record that indicates when Defendant Pitts filed or served her complaint in the Underlying Actions, or when Nautilus was notified of Defendant Pitts' complaint. However, Defendant Pitts' complaint is dated August 25, 2014. (Doc. 39-2 at 12).

On March 30, 2015, Nautilus filed its Reply in support of its motion for summary judgment and responded to Defendants Harris and Banks' motion to dismiss Nautilus' Second Amended Complaint. (Docs. 69 and 70). As such, Nautilus' Motion for Summary Judgment and Defendants Harris and Banks' Motion to Dismiss Nautilus' Second Amended Complaint are now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## MOTION TO DISMISS

Defendants Harris and Banks assert that the instant action is not properly before the Court because Nautilus has failed to join Put Put as a real party in interest under Federal Rule of Civil Procedure 17 or, alternatively, as an indispensable party under Federal Rule of Civil Procedure 19.

### I.   Federal Rule of Civil Procedure 17

Federal Rule of Civil Procedure 17 requires that "[a]n action [] be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Rule 17 defines a "real party in interest" as a "person for whose benefit [an] action is brought." *Id.* More specifically, Rule 17 provides that "a party with whom or in whose name a contract has been made for another's benefit" may "sue in their own name[] without joining the person for whose benefit the action is brought." *Id.*

Defendants Harris and Banks argue that Put Put, as the named insured, is the real party in interest in this action. (Doc. 54 at 8). But, because Put Put is a trade name, not a legal entity under Georgia law or the Federal Rules of Civil Procedure, its joinder is not feasible. (*Id.* at 8-9). Defendants Harris and Banks raised this same argument in their Motion to Dismiss Nautilus' first amended complaint. *See* (Doc. 19-1 at 17-18). In its previous Order, the Court held that Defendants Harris and Banks' argument was without merit, finding in part that:

> Defendants' reliance on Rule 17(a), which addresses who may bring an action on behalf of the real party in interest, is improper and provides no authority for the relief Defendants request. Federal Rule of Civil Procedure 17(a) directs that "[a]n action must be prosecuted in the name of the real party in interest." The Supreme Court has made clear "[t]hat Rule [17], as its text displays, speaks to joinder of plaintiffs, not defendants."

*** 

> Defendants' conclusory statements that "Put Put must be joined as a party to this action because 'the Court cannot accord complete relief among existing parties' in its absence," and "a judgment rendered in the absence of Put Put prejudices existing parties by lending unfounded support to Nautilus' claim that Headhunters is not an insured," with no further support or explanation, do not convince this Court otherwise.

(Doc. 26 at 10-11) (citing *Lincoln Property Co. v. Roche*, 546 U.S. 81, 90 (2005)).  Rule 17 remains inapplicable to the issue of joinder of defendants and Defendants Harris and Banks have advanced no argument that would alter this holding.

## II.    Federal Rule of Civil Procedure 19

Defendants Harris and Banks also advance the spurious argument that this action must be dismissed because Plaintiff has failed to join Put Put as an indispensable party under Federal Rule of Civil Procedure Rule 19.  Specifically, Defendants Harris and Banks contend that joinder of Put Put is not feasible because, under Georgia law, Put Put "is not an entity with capacity to sue and be sued[,]" while at the same time arguing that "a judgment rendered in the absence of Put Put [] prejudices existing parties by lending unfounded support to Nautilus' claim that Headhunters [Racetrack] is not an insured."  (Doc. 54 at 8-9).

Federal Rule of Civil Procedure 12(b)(7) allows a party to assert the defense of failure to join a party under Rule 19.  In turn, Rule 19(a) prescribes conditions for joinder of an indispensable party, which is defined as "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction."  Fed. R. Civ. P. 19(a)(1).  Rule 19(b) provides, "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

Furthermore, because Rule 19 functions "to eliminate formalistic labels that restricted many courts from an examination of the practical factors of individual case[s]" prior to the Rule's amendment in 1966, "pragmatic concerns, especially the effect on the parties and on the litigation, control a court's decision on joinder."  *Smith v. State Farm Fire and Cas. Co.*, 633 F.2d 401, 405 (5th Cir. 1980).  To that end, the Eleventh Circuit explained in *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.*, that:

> Rule 19 states a two-part test for determining whether a party is

> indispensable. First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.

669 F.2d 667, 669 (11th Cir. 1982). *See also Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1279-80 (11th Cir. 2003).

Put Put is not a required party under Rule 19. As an entity that lacks the "capacity to sue and be sued," Put Put is not an entity that is "subject to service of process" pursuant to the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(h), *Cornwall v. Miami-Dade Cnty Corrections and Rehabilitation Dept.*, No. 2010-CV-23561-MGC, 2011 WL 3878352, at *3 (S.D. Fla. Aug. 31, 2011) ("[MDCR] as a division of Miami-Dade County, lacks the capacity to be sued. . . . Therefore, Mr. Cornwall's claims against MDCR are dismissed with prejudice."). As Defendants Harris and Banks have failed to establish that Put Put is a required party that must be joined under Rule 19(a), the Court need not determine if Put Put is an indispensable party under Rule 19(b). *See U.S. v. Janke*, No. 2009-CV-14044-KMM, 2009 WL 2525073, at *2 (S.D. Fla. Aug. 17, 2009) ("Because Defendants do not meet their burden of demonstrating that AHC should be joined under Rule 19(a), the Court need not determine whether AHC would be indispensable under Rule 19(b)") (citing *Focus on the Family*, 344 F.3d at 1279), *Marler v. Cook*, No. 2013-CV-423-CG-N, 2013 WL 6386317, at *6 (S.D. Ala. Dec. 6, 2013) ("Thus, because the absent Mrs. Marler is not a necessary (or required) party pursuant to Rule 19(a), the Court need not order that she be joined or consider whether this action should proceed in her absence, under Rule 19(b), or be dismissed, pursuant to Rule 12(b)(7)."

Accordingly, as joinder is not required under Rule 17 or Rule 19, Defendants Harris and Banks' Motion to Dismiss is denied.

## SUMMARY JUDGMENT

### I. Legal Standard

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  An issue of fact "is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact.  *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009).  The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *See Celotex*, 477 U.S. at 322-24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586 (citations and internal quotations omitted).  Instead, the nonmovant must point to evidence in the record that would be admissible at trial.  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quotation omitted).  Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant.  *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual

inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.   **Defendant Pitts' Response**

Before turning to the merits of Nautilus' Motion for Summary Judgment, the Court must determine whether to consider Defendant Pitts' untimely response to Nautilus' Motion for Summary Judgement. Under Fed. R. Civ. P. 16(b)(2), the Court is required to enter an order limiting the time to file and hear motions. Pursuant to this District's Local Rules, a party must file and serve its response to a dispositive motion within twenty-one (21) days after the movant serves its pleadings. (M.D. Ga. L. R. 7.2). However, a party may request an extension of its deadline to file a responsive motion by filing a written request with the court within five (5) days of the deadline and explaining its need for an extension. (M.D. Ga. L. R. 6.2). In this action, the Court entered a Rules 16 and 26 Scheduling and Discovery Order requiring that dispositive motions be filed by January 6, 2015. (Doc. 37 at 10). Subsequently, the Court extended the deadline for filing dispositive motions to February 6, 2015. (Doc. 47). Nautilus timely filed and served its Motion for Summary Judgment on February 6, 2015. (*See generally* Docket). Defendants' Responses were due on February 27, 2015. Defendant Pitts untimely filed her response on March 17, 2015, eighteen (18) days after it was due. Defendant Pitts did not request an extension for filing her response, nor has she provided any explanation for her untimely filing. *See* Fed. R. Civ. P. 6(b), *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnerships*, 507 U.S. 380, 395 (1993). Therefore, the Court declines to consider and strikes Defendant Pitts' response to Nautilus' Motion for Summary Judgment, Statement of Undisputed Material Facts, and Response to Plaintiff's Statement of Undisputed Material Facts. (Docs. 62, 63, 64, and 64-1). *See Mosley v. MeriStar Management Co., LLC*, 137 F. App'x 248, 250 (11th Cir. 2005) (finding that district court did not abuse its discretion by striking Plaintiff's response in opposition to Defendant's motion for summary judgment where response was filed four (4) days late).

## III.   **Discussion**

Nautilus argues that it owes no duty to defend or indemnify the Racetrack, Club, or Individual Defendants in the Underlying Actions because the Participants Exclusion and Punitive Damages Exclusion preclude coverage based on the claims asserted by Defendants Harris, Banks and Pitts.   Defendants contend that the doctrine of waiver and estoppel prevents Nautilus from asserting a noncoverage defense to claims in the Underlying Actions. Alternatively, Defendants argue that the Participants Exclusion is unenforceable and contrary to public policy because its terms exceed the scope of insurance exclusions permitted under O.C.G.A. § 43-25-4 and its application leaves innocent third party victims without recourse to insurance proceeds mandated under the statute.

The Court first addresses whether Nautilus has waived, or is estopped from asserting, its noncoverage defense in the instant action.   Next, the Court addresses whether the Participants Exclusion is enforceable.   Finally, the Court addresses whether the application of the claims in the Underlying Actions to the terms of the Participants Exclusion compels Nautilus to defend or  indemnify the Racetrack, Club or Individual Defendants.

### A.   Waiver and Estoppel of Noncoverage Defense

Prior to February 22, 2012, Nautilus issued commercial general liability insurance policy number NN093263 to "Put Put Racetrack" as the named insured for the period February 22, 2012 to February 22, 2013.  (Doc. 13-9).  Section I of the Policy's Commercial General Liability Coverage Form provides in relevant part, "[Nautilus] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply."   (Doc. 13-9).   Under Georgia law, "in the absence of a reservation of rights[,] a liability insurer may waive and be estopped to assert a defense of noncoverage by assuming the defense of a suit against its insured[.]"  *Prescott's Altama Datsun v. Monach Ins. Co. of Ohio*, 253 Ga. 317, 318, 319 S.E.2d 445, 447 (1984), *see Jones v. Georgia Cas. & Surety Co.*, 89 Ga. App. 181, 185, 78 S.E.2d 861, 864 (1953) (noting, "if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming and giving its notice of reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage."").   Conversely, an insurer "can avoid estoppel by giving timely notice of its reservation of rights[.]"   *State Farm Fire and Cas. Co. v. Walnut Avenue Partners, LLC*, 296 Ga. App. 648, 653, 675 S.E.2d 534, 539 (2009)

(citation omitted).  "At a minimum, the reservation of rights must fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the insured." *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 287 Ga. 149, 152, 695 S.E.2d 6, 10 (2010) (citation and punctuation omitted). Indeed, "[t]he reservation of rights should inform the insured of the specific basis for the insurer's reservations about coverage." (*Id.*) (citation and punctuation omitted).

A review of the record and Georgia law establishes that Nautilus did not waive its rights and is not estopped from asserting its right to not defend or indemnify.  In fact, Nautilus timely issued several letters advising Defendants that key Policy exclusions applied and expressly reserving its right to deny coverage and not to defend or indemnify.  The record indicates that, following Antonio Harris' accident at Put Put, Nautilus sent seven (7) reservation of rights letters to the Racetrack, Club, and Individual Defendants dated September 7, 2012; October 30, 2012; July 23, 2013; October 16, 2013; October 28, 2013; May 6, 2014; and October 15, 2014. *See* (Docs. 41-2; 41 ¶ 21; 51 ¶ 53; 54-2 ¶ 53; and 61 ¶ 4). Nautilus timely issued its reservation of rights letters, sending the first letter to Defendant Yarbrough within two weeks of being notified of the accident.  *See* (Doc. 41-2 at 9), *see also Walnut Avenue Partners*, 296 Ga. App. at 653, 675 S.E.2d at 539 (An "insurer can avoid estoppel by giving timely notice of tis reservation of rights[.]")

Furthermore, Nautilus' letters explicitly stated that Nautilus had determined that the terms of the Participants Exclusion and Punitive Damages Exclusion precluded, or likely precluded, coverage for the claims in the Underlying Actions.  *See* (Doc. 41-2 at 3-7, 10-11, 15-16, 18-24, 27, 31, and 33-37).  Thus, Nautilus "fairly informed" the Racetrack, Club, and Individual Defendants of the "specific bas[e]s for [Nautilus'] reservations about coverage." *World Harvest Church, Inc.* 287 Ga. at 152, 695 S.E.2d at 10.  Moreover, Nautilus advised Defendants that it was undertaking the investigation and defense of the claims while nevertheless reserving its right to discharge its duty to defend and indemnify Defendants. *See* (Doc. 41-2 at 2, 7-9, 11, 14, 16, 19, 24, 27, 31, 34, and 37), W*orld Harvest Church, Inc.* 287 Ga. at 152, 695 S.E.2d at 10.

Finally, in each letter Nautilus provided contact information in case Defendants wished to discuss the information provided.  No Defendant ever responded to any of the letters.  "By not objecting to [any of] the reservation of rights letter[s] and by permitting

[Nautilus] to go forward with its defense of the [Underlying Actions], [Defendants are] deemed to have consented to the letter[s'] terms." *Jacore Systems v. Central Mut. Ins. Co.*, 194 Ga. App. 512, 513, 390 S.E.2d 876, 878 (1990).  Therefore, Nautilus has not waived its rights, nor is it estopped from denying coverage and refusing to indemnify on the basis that the Participants Exclusion or the Punitive Damages Exclusion preclude coverage for the claims asserted in the Underlying Actions.

### B. Participants Exclusion

#### 1. Enforceability

The Racetrack and Individual Defendants argue that the Participants Exclusion is void and contrary to public policy because "the only permissible exclusion [in the text of O.C.G.A. § 43-25-4][7] pertains to drivers engaged in a 'race'" and thus the Participants Exclusion's noncoverage for injuries arising from a driver's practice or preparation for a race exceeds the scope of the permissible statutory exclusion.

Georgia Code § 43-25-4 requires those obtaining a license to operate a racetrack to carry:

> a valid public liability insurance policy with minimum limits of $1 million per accident and $100,000.00 per person per accident, or $1 million combined single limit . . . . The policy [] shall be designed to provide coverage for the protection of the licensee from any legal liability arising out of bodily injury, including death, to any member of the general public, resulting from any racing event. The insurance policy [] shall not be designed to provide coverage for bodily injuries or death of drivers of motor vehicles which are engaged in any race, any pit area personnel, or any person who is involved in the conduct of a race.

O.C.G.A. § 43-25-4.

It is clear from the text of the Statute that the purpose of § 43-25-4 is to protect spectators gathered at a racetrack to observe drivers operate motor vehicles, whether in the course of an actual race, a driver's practice or preparation for actual races, or an exhibition. *See Abrohams v. Atlantic Mut. Ins. Agency*, 282 Ga. App. 176, 178, 638 S.E.2d 330, 332 (2006) ("In the absence of words of limitation, words in a statute should be given their ordinary and everyday meaning.") (Citation and punctuation omitted.).  Explicitly excluded from coverage

---

[7] Georgia Code § 43-25, *et seq.* enumerates licensing and safety requirements for operators of motor vehicle racetracks. *See* O.C.G.A. § 43-25, *et seq.*

are drivers, pit crew members and others involved in conducting races.  While § 43-25-4 requires racetrack operators to insure innocent spectators, nothing in the code requires racetrack operators to insure drivers, regardless of whether they are racing or practicing. Under Georgia law, "an insurance company is free to fix the terms of its policies as it sees fit, so long as such terms are not contrary to law, and it is equally free to insure against certain risks while excluding others."  *Nationwide Mut. Fire Ins. Co. v. Somers,* 264 Ga. App. 421, 426, 591 S.E.2d 430, 434 (2003).

Furthermore, the Participants Exclusion is not void as a matter of public policy because its terms do not threaten to penalize innocent victims, or to unfairly expose the purported insureds to liability.  *See Southern Guar. Ins. Co. v. Preferred Risk Mut. Ins. Co.*, 257 Ga. 355, 356, 359 SE2d 665, 667 (1987); *Moore v. Allstate Ins.*, 211 Ga. App. 827, 828, 440 S.E.2d 682, 683 (1994); *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 338, 329 S.E.2d 136, 139 (1985) (observing, in declaratory judgment action arising under Georgia's compulsory motor vehicle liability law, that policy excluding coverage for use of an automobile "in a prearranged or organized drag racing or speed contest . . . does not appear to be void as a matter of public policy, at least under normal organized racing conditions.").

## 2.  Applicability

Under Georgia law,

> [a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. [Courts] look to the allegations of the complaint to determine whether a claim covered by the policy is asserted. If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action.

*City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 207, 498 S.E.2d 782, 784 (1998) (citations omitted).  An insurer is excused from its duty to defend and to indemnify if the claims asserted in an underlying complaint, "unambiguously exclude coverage under the policy."  *Penn-America Ins. Co. v. Disabled American Veterans, Inc.,* 268 Ga. 564, 566, 490 S.E.2d 374, 376 (1997) (citation omitted).  As such, "it is only where the complaint sets forth true factual allegations showing no coverage that the suit is one for which liability insurance coverage is not afforded and for which the insurer need not provide a defense."  *Id.* (citations omitted).  Based on the foregoing principles, the Court does not inquire whether

19

the Racetrack, Club, and Individual Defendants are actually liable in the Underlying Actions, but whether a claim that falls within the policy coverage is asserted in the Underlying Actions. *See St. Paul Fire & Marine Ins. Co. v. Mitchell*, 164 Ga. App. 215, 216, 296 S.E.2d 126, 127 (1982), *Contrell v. Allstate Ins. Co.*, 202 Ga. App. 859, 859, 415 S.E.2d 711, 712 (1992).

In the Underlying Actions, Defendant Harris states that Antonio Harris "was driving his car on Defendant's racetrack when he lost control of it, hit a guardrail, was seriously injured, and died the same day from his injuries." (Doc. 13-1 ¶ 7).  Defendant Pitts also alleges that Antonio Harris was driving at the track when he crashed through the guardrail. (Doc. 39-2 ¶ 4).  Defendant Pitts also alleges that, "Defendants in allowing decedent, [Antonio Harris], and others to race on the track with unsafe guardrails and in failing to take adequate measures to protect its business invitees from the hazards presented by the unsafe guardrails were otherwise negligent." (*Id.* ¶ 41).

As noted previously,  Part A of the Participants Exclusion provides, "[t]his insurance does not apply to 'bodily injury' or medical payments to any 'participant' while in the 'activity area[,]'" and excludes "any person practicing [sic], preparing or rehearsing for, . . . participating or sparing in, any event" from coverage. (Doc. 13-9).  Under Georgia law, a policy exclusion "that is plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured." *Garland, Samuel & Loeb, P.C. v. Am. Safety Cas. Ins. Co.*, 287 Ga. App. 254, 256, 651 S.E.2d 177, 179 (2007) (internal quotation marks omitted).  Nautilus, as an insurer, bears the burden of proving that the Participants Exclusion is applicable.  *See York Ins. Co. v. Williams Seafood of Albany, Inc.*, 223 F.3d 1253, 1255 (11th Cir. 2000) (applying Georgia law).  "[A]ny exclusion from coverage sought to be invoked by the insurer is [] strictly construed [against the insurer as drafter of the policy exclusion]." *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615, 29 S.E.2d 561, 563 (1983); *see also Ivey v. First of Georgia Ins. Co.,* 209 Ga. App. 784, 788-789, 434 S.E.2d 556, 559-560 (1993) ("Exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.") (Citation and punctuation omitted).

The facts, as alleged by Defendants, establish that Antonio Harris was a "participant" in the "activity area" when he was injured at Put Put Racetrack on August 23, 2012.

Accordingly, pursuant to the terms of the Participants Exclusion, Nautilus is not bound to insure for the "bodily injury" suffered by Antonio Harris.

### C. Punitive Damages Exclusion

The Policy's Punitive Damages Exclusion unambiguously provides, "[t]his insurance does not apply to punitive or exemplary damages." (*Id.*)  Defendants do not dispute this but instead argue that the Participants Exclusion is void as against public policy.  *See* (Docs. 54-2 ¶ 55 and 61 ¶ 4).  It is undisputed that no Defendant was a member of the general public or represents the interest of any member of the general public injured at Put Put on August 23, 2012.  Furthermore, because the insurance exclusion mandate in O.C.G.A. § 43-25-4 expressly precludes recovery by drivers of motor vehicles, it stands to reason that O.C.G.A. § 43-25-4 does not permit the recovery of punitive damages by parties representing the interests of the minor children or the estate of a driver killed while practicing or participating in a race or exhibition on the drag strip.  Thus, the Punitive Damages Exclusion is enforceable and not contrary to the public policy interests advanced by O.C.G.A. § 43-25-4. Accordingly, the Court finds that Nautilus has no duty to indemnify the Racetrack, Club, or Individual Defendants against any punitive damages awarded in the Underlying Actions.

### D. Qualified Insureds Under the Policy

Defendants' final argument is that the Racetrack, Club, and Individual Defendants qualify as insureds under the Policy because Put Put, the named insured, is a trade name, not a legal entity.  *See* (Doc. 54 at 12-15; 60 at 4-5).  This issue, however, is immaterial.  As a matter of law, the Participants Exclusion and Punitive Damages Exclusion preclude coverage of the claims in the Underlying Actions regardless of whether the Racetrack, Club, or Individual Defendants are construed as a qualified insureds under the Policy.  Thus, Nautilus would still be excused from its duty to defend or indemnify the Racetrack, Club, or Individual Defendants against claims in the Underlying Actions.

### IV. <u>Conclusion</u>

In light of the foregoing, Nautilus' Motion for Summary Judgment, (Doc. 50), is **GRANTED**.  Accordingly, Nautilus owes no duty to defend or indemnify the Racetrack, Club, or Individual Defendants against any of the claims arising out of, or connected with,

the Underlying Actions, and **JUDGMENT** shall be entered in favor or Nautilus.[8] Furthermore, Defendants Harris and Banks' Motion to Dismiss Nautilus' Second Amended Complaint, (Doc. 55), is **DENIED**.

        **SO ORDERED**, this __31st__ day of March, 2016.

         /s/ Leslie J. Abrams

        **LESLIE J. ABRAMS, JUDGE**
        **UNITED STATES DISTRICT COURT**

---

[8] The Court notes that, had it considered Defendant Pitts' response to Nautilus' motion for summary judgment, its holding would remain the same.  In her response, Defendant Pitts merely "join[ed] and adopt[ed] the arguments and citation of authority of" Defendants Harris, Banks and the Racetrack and Individual Defendants, which the Court has addressed in this Order.